S & C MOTORS *v.* CARDEN.

5-248                                                   264 S. W. 2d 627

Opinion delivered February 15, 1954.

*Ernest T. Briner, James M. McHaney* and *Owens, Ehrman & McHaney,* for appellant.

GRIFFIN SMITH, Chief Justice. Elmer Carden, Jr., while a resident of California, procured from a California corporation styled S & C Motors, a Ford custom convertible coupe. A title-retaining agreement—designated conditional sales contract—was executed January 19, 1952. Credit was given for Carden's old sedan, leaving a balance of $2,197.80 payable monthly at $122.10. The first payment (due March 3d) was made, but the purchaser defaulted on the April obligation.

Eighteen days after the second payment fell due Carden entered the U. S. military service. On May 17,

1952, the parties made a new agreement in writing whereby the original payments were reduced to $40 for eleven months. In respect of total liability it was provided that a final payment of $1,574.83 would mature April 25, 1953. A further provision was that all other terms of the original contract should remain in full force.[1]

Under the re-negotiated contract Carden's first $40 remittance was due May 25, 1952. Three such payments were made, but the obligation maturing August 25 was neglected. Carden drove the car to his parents' home in Saline County, where on October 21, 1952, the automobile company sought to replevy. A redelivery bond was filed. Prior to trial in December, 1952, Carden returned to California and was sent overseas.

The case was heard by the judge, a jury having been waived. The company appeals (a) from the court's finding that the defendant was entitled to benefits under the Soldiers' and Sailors' Civil Relief Act of 1940, as amended in 1942, but (b) contends that if the Act is applicable the court abused its discretion in allowing $320 in delinquent installments to be paid, and then directing acceptance of $40 per month not only during the period covered by the re-negotiated contract, but until the item of $1,574.83 should be liquidated—approximately forty additional months. No allowance was made for the fact that the company was being compelled to carry the diminishing balance more than three years beyond the initial agreement; nor was the defendant required to pay interest on these judicially deferred installments.

---

[1] The cause was tried upon a stipulation of facts disclosing the figures shown above. The new agreement, however, recited a balance of $2,075.70, and "that the obligor will pay the company the sum of $2,014.83," and that the final installment is $1,574.83, and "Furthermore, if the obligor is still in the active military service and unable to pay the final installment of the revised agreement as written above when it becomes due, the company will grant a further extension of said installment to be payable in monthly installments in such amounts as the parties hereto may agree upon at the time," etc. [There is a seeming discrepancy of $60.87. When $440 is deducted from $2,075.70 the remainder is $1,635.70 instead of $1,574.83 as set out in the agreement.]

Appellant addresses itself, first, to the proposition that § 517, Title 50, U. S. C. A., being a 1942 amendment to the Act, was intended to permit what the automobile company undertook to do. The wording is that "Nothing contained in this Act shall prevent . . . (b) the repossession, retention, foreclosure, sale, forfeiture, or taking possession of property which is security for any obligation or which has been purchased or received under a contract, lease, or bailment, pursuant to a written agreement of the parties thereto [including the person in military service . . . or their assigns] *executed during or after the period of military service* of the person concerned, or during the period specified in . . . [§ 516]".

Prior to the 1942 amendment (Public Laws—Ch. 888, Art. III, § 301 (1) the enactment read: "Provided, that nothing contained in this section shall prevent the modification, termination, or cancellation of any such contract, or prevent the repossession or retention of property purchased or received under such contract, pursuant to a mutual agreement of the parties thereto, or their assigns, if such agreement is executed in writing subsequent to the making of such contract and during or after the period of military service of the person concerned."

The slight change in phraseology [2] between the Act of 1940 and the 1942 amendment now appearing as § 517 does not justify a conclusion that the service man who contracted subsequent to his induction was deprived of all rights intended to be conferred under congressional authority.

But there is nothing in the record, other than a failure to pay, showing that undue hardships would result from enforcement of the contract; and while court procedure is imperative (§ 531), the law gives relief only in cases of disclosed hardship.

Section 533 applies to the owner of property who seeks to resume possession, or to rescind or terminate a

---

[2] For brevity some of § 517 has been omitted.

contract for purchase. Where the action has been stayed, as here, the court may, "unless in his opinion an undue hardship would result to the dependents of the person in military service, appoint three disinterested parties to appraise the property and, based upon the report of the appraisers, order such sum, if any, as may be just, paid to the person in military service or his dependent, as the case may be, as a condition of . . . resuming possession of the property, or rescinding or terminating the contract."

It is stated in appellant's brief that the automobile is now in possession of Carden's mother and father, who executed the retention bond; that it is being used by them, is deteriorating through such use, and that security for the unpaid balance is rapidly diminishing.

In these circumstances we think the trial court should proceed under § 533.

Reversed.

